## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**BRITTANY GLENN, AS ADMINISTRATOR**
**OF THE ESTATE OF YVETTE GLENN**                                    **PLAINTIFF**

**vs.**                                    **CIVIL ACTION No.: 3:22-CV-163-HTW-LGI**

**DENIS MCDONOUGH, SECRETARY,**
**UNITED STATES DEPARTMEN OF VETERAN AFFAIRS**          **DEFENDANT**
_____

### ORDER
_____

BEFORE THE COURT is Defendant Denis McDonough's ("Defendant") Motion to Dismiss Plaintiff Brittany Glenn's ("Plaintiff") First Amended Complaint [ECF No. 23]. Having reviewed the parties' submissions, the relevant case law, and applicable legal standards, this Court finds as follows:

### I.      JURISDICTION

This Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331[1] as the claims arise under federal law, specifically Title VII of the Civil Rights Act of 1964[2] ("Title VII"), the Age Discrimination in Employment Act (ADEA), and associated federal anti-discrimination statute 42 U.S.C. 1981[3].

---

[1] Title 28 U.S.C. § 1331:
    Federal question. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[2] Title 42 U.S.C. § 2000e-2(a) provides: "[i]t shall be an unlawful employment practice for an employer -(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, or conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; ... ."

[3] Equal Rights Under the Law.

## II.    BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff serves as the Administrator of the Estate of Yvette Glenn ("Glenn"). Glenn was employed as a nurse practitioner at the Sonny Montgomery Veterans Affairs Medical Center in Jackson, Mississippi, which is part of the United Staters Department of Veteran Affairs ("VA"). [ECF No. 21].  Plaintiff alleges that Glenn, an African American woman over the age of forty (40), was subjected to discrimination based on her race and age, as well as retaliation for engaging in the below described protected Equal Employment Opportunity (EEO) activity. [ECF No. 21, ¶¶ 82-144].

Glenn filed multiple EEO complaints during her tenure at the VA, beginning in 2019. Her complaints alleged repeated instances of discriminatory treatment, including denial of promotions, increased scrutiny, and retaliatory investigations following her support of another minority employee's discrimination claims. Glenn's administrative complaints were consolidated and reviewed by the EEOC, which ultimately dismissed them, finding insufficient evidence of discrimination. Plaintiff now seeks judicial review of those findings, asserting that the administrative process failed fully to consider material facts, and that the VA engaged in a pattern of systemic discrimination and retaliation.

Among the specific allegations, Plaintiff contends that: (1) Glenn regularly was denied access to training necessary for career advancement, while similarly situated employees outside her

---

**(a) Statement of equal rights**.
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
**(b) "Make and enforce contracts" defined**
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
**(c) Protection against impairment**
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C.A. § 1981 (West)

protected class were granted those opportunities; (2) she was assigned additional duties beyond her job description without corresponding compensation; (3) she was subjected to unwarranted negative and retaliatory performance evaluations and reviews.

The VA allegedly removed Glenn from her primary job duties in a specialized Eye Clinic, transferred her to unfamiliar departments without justification, and ultimately subjected her to a work environment that Plaintiff claims was both hostile and discriminatory.

On March 25, 2022, Plaintiff filed the original complaint against the Defendant, in his official capacity as the VA Secretary [ECF No. 1]. Defendant filed a Motion to Dismiss or, in the Alternative, a Motion for a More Definite Statement. The Court granted the latter request, allowing Plaintiff to file an Amended Complaint [ECF No. 20]. Plaintiff then filed her First Amended Complaint on February 22, 2023 [ECF No. 21][4].

Defendant thereafter filed the present Motion to Dismiss, arguing that Plaintiff's claims remain factually deficient and should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6)[5].

### III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere labels, conclusions, or formulaic recitations of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[4] In the interim, on September 4, 2022, Glenn passed away. On November 3, 2022, this Court allowed Plaintiff, Glenn's daughter, to replace Glenn as a party to this lawsuit.

[5] Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (6) failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12.

A claim is facially plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard…asks for more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Accordingly, a claim is "implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 667). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

Employment discrimination claims under Title VII and the ADEA must allege facts that, if true, would allow a reasonable inference that the employer engaged in unlawful discrimination. Courts apply the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), requiring a plaintiff first to establish a prima facie case of discrimination or retaliation. At the pleading stage, a plaintiff need not prove a prima facie case but must allege facts sufficient to raise a "plausible inference" of discrimination. See *Swierkiewicz v. Sorema N.A*., 534 U.S. 506 (2002).

## IV.    ARGUMENTS

### A.    *Defendant's Arguments*

Defendant asserts that Plaintiff's First Amended Complaint remains insufficient to state a claim under Title VII and/or the ADEA. Specifically, Defendant contends that:

1. Plaintiff has not adequately alleged an adverse employment action.

2. The allegations lack sufficient factual support to establish a link between any employment decision and a discriminatory or retaliatory motive.

3. Plaintiff improperly relies on conclusory allegations and documents outside the pleadings.

4

Defendant, in support of its Motion, cites Fifth Circuit precedent holding that an adverse employment action must be an "ultimate employment decision" such as hiring, granting leave, discharging, promoting, or compensating an employee. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019). Plaintiff did not allege any such ultimate employment decision, says Defendant, therefore, her allegations are insufficient.

### B.    Plaintiff's Arguments

Plaintiff argues that her First Amended Complaint, [ECF No. 21], sufficiently states claims of discrimination and retaliation. She contends that:

1.  The allegations detail multiple adverse employment actions, including denial of training, excessive work assignments, and hostile treatment by supervisors.

2.  Comparators outside of her protected class were treated more favorably.

3.  Defendant's argument improperly applies an evidentiary standard rather than the notice pleading requirements of Rule 8.

Plaintiff relies on *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), asserting that she need not establish a prima facie case at the pleading stage, but simply must allege facts supporting a plausible inference of discrimination.

## V.    ANALYSIS

### A.   Discrimination Claims

The Court of Appeals for the Fifth Circuit has explained that on a Rule 12(b)(6) motion, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (l) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Olivarez v. T-mobile USA, Inc., 991* F.3d 595, 600 (5th Cir. 2021), cert. denied, 142 S. Ct.

713 (2021) (quoting *Cicalese v. Univ. of Texas Med  Branch,* 924 F.3d 762, 767 (5th Cir. 2019);

see also *Leal v. McHugh,* 731 F.3d 405,411 (5th Cir. 2013) (analyzing age discrimination claim).

In *Bryant v. Compass Group USA Inc.,* 413 F.3d 471 (5th Cir. 2005), the Court noted that

disparate treatment in training, promotions, and workload assignments can establish a

discriminatory intent if similarly situated employees outside the protected class were treated more

favorably.

Plaintiffs First Amended Complaint describes intentional actions by her supervisors, to

wit: denying leave; overloading Glenn with work; subjecting Glenn to unfounded investigations;

and artificially low performance evaluations. Plaintiffs further alleges that Glenn repeatedly

requested training opportunities and was denied, while male and younger employees received

training that led to advancement

Plaintiff alleges that these actions began immediately after she spoke out against

discrimination and filed EEO complaints, establishing a temporal connection between her

protected activity and the adverse actions. This temporal proximity is sufficient to support a causal

link under Fifth Circuit law. See *Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir. 2001).

Further, the United States Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S.

53 (2006) established that a materially adverse action includes changes that would deter a

reasonable worker from making a charge of discrimination.

This Court finds that these actions, when considered in the context of her protected status

and the lack of similar treatment of comparators outside her protected class, are sufficient to

establish adverse employment actions under Fifth Circuit precedent (*Cicalese v. Univ. of Texas

Med  Branch,* 924 F.3d 762, 767 (5th Cir. 2019)).

### A.    *Retaliation Claims*

Retaliation claims require proof that the employer took an adverse action because the employee engaged in protected activity. See *Strong v. Univ. Healthcare Sys., L.L.C.,* 482 F.3d 802, 808 (5th Cir. 2007). Plaintiff alleges that Glenn engaged in protected EEO activity and that soon after, she faced increased scrutiny, negative performance evaluations, and reassignment to less desirable positions. Plaintiff identifies this protected EEO activity as filing EEO complaints and speaking out against discrimination, which are recognized forms of protected activity under Title VII. See *Richards v. JRK Prop. Holdings,* 405 Fed. Appx. 829, 831 (5th Cir. 2010).

Further, temporal proximity between protected activity and an adverse employment action can support an inference of retaliation. See *Shirley v. Chrysler First, Inc.,* 970 F.2d 39 (5th Cir. 1992). Plaintiff alleges that adverse actions occurred shortly after Glenn filed EEO complaints, which, if substantiated, could demonstrate a retaliatory motive.

### B.    *Hostile Work Environment*

To state a claim for hostile work environment under Title VII, Plaintiff must allege harassment that is severe or pervasive enough to alter the conditions of employment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Plaintiff's allegations meet these requirements,

Plaintiff describes daily harassment and retaliation that interfered with Glenn's work performance and caused significant emotional distress, which is sufficient to establish a hostile work environment under Fifth Circuit standards. *English v. Perdue,* 777 F. App'x 94, 95 (5th Cir. 2019). Finally, Plaintiff alleges that the Agency was aware of the harassment and failed to take prompt remedial action, which is necessary to establish employer liability. *Harris v. Forklift Sys., Inc.,* 510 U.S. at 21.

## VI.    CONCLUSION

This Court, for the reasons stated above, finds that Plaintiff has pled sufficient facts to survive a motion to dismiss at this stage. Accordingly, Defendant's Motion to Dismiss Plaintiff's Amended Complaint **[ECF No. 23]** is **DENIED.**

**SO ORDERED this the 26th day of March, 2025.**

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**